

UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

H-10- 500

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. |
| | § | |
| VS. | § | Counts One to Four: 18 U.S.C. § 1343 |
| | § | |
| ROBERT DANIEL HEARN, | § | Count Five: 18 U.S.C. § 654 |
| | § | |
| Defendant. | § | UNDER SEAL |

United States Courts
Southern District of Texas
FILED

JUL 21 2010

David J. Bradley, Clerk of Court

### INDICTMENT

The Grand Jury charges that at all relevant times:

### INTRODUCTION

1. From on or about April 17, 2005, to on or about September 26, 2006, defendant ROBERT DANIEL HEARN was employed by the United States Department of State, Iraq Reconstruction Management Office ("IRMO"), and worked as Deputy Senior Consultant to the Iraqi Ministry of Transportation, Maritime Affairs, at the Port at Umm Qasr, Basra, Iraq ("the Port"). His job was to provide expert advice and technical assistance to the Director of the Port, in order to help Iraq rebuild a successful operation at the Port.

2. Defendant ROBERT DANIEL HEARN had no authority to enter into contracts on behalf of the United States, to authorize the transfer of any property on behalf of the United States, or to take custody or control of any property in his capacity as an employee of the United States.

3. As an employee of the United States government, defendant ROBERT DANIEL HEARN was prohibited from negotiating or entering into arrangements on behalf of the United States that benefitted himself or his family.

4. In or about 2005 and 2006, Bawabet Al Amer Company ("BAC") was an Iraqi

business operating at the Port. BAC engaged in various business endeavors at the Port, including providing security, through subcontractors, as well as lodging, office space, and food for government and private personnel. BAC also sold fuel to ships docked at the Port. BAC was not a registered business entity in the United States.

5. From in or about the summer of 2005, to in or about the fall of 2006, defendant ROBERT DANIEL HEARN exercised control over the day-to-day operations of BAC. On behalf of BAC and a silent investor in BAC, defendant ROBERT DANIEL HEARN negotiated business contracts, provided input in BAC's hiring decisions, and directed the work of BAC employees.

## COUNTS ONE THROUGH FOUR
### (Wire Fraud – 18 U.S.C. § 1343)

6. The Grand Jury realleges here the allegations in paragraphs 1 through 5 of the Introduction of this Indictment.

**A.** **THE SCHEME TO DEFRAUD**

7. Beginning in or about the fall of 2005, and continuing to in or about September 2006, in the Southern District of Texas and elsewhere, defendant

**ROBERT DANIEL HEARN**

knowingly and intentionally engaged in a scheme to defraud the government of the United States and the government of Iraq of money and property by entering into business arrangements involving property of the United States and Iraq, without proper authorization, and employing false and fraudulent pretenses, representations, and promises in executing the scheme to defraud.

B.  **PURPOSE AND OBJECT OF THE SCHEME**

8. It was a purpose of the scheme to defraud for defendant ROBERT DANIEL HEARN to enrich himself and support his business interests with BAC by converting to his use property of the United States and Iraq and diverting proceeds of such conversion to a bank account under his control.

C.  **THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

9. Through use of false and fraudulent representations, defendant ROBERT DANIEL HEARN took possession of property of the United States and Iraq, including caravans or trailers used for housing and office space.

10. In or about September 2006, defendant ROBERT DANIEL HEARN negotiated rental of the caravans to a private party, without proper authorization, and directed payment via electronic fund transfers to a bank account he controlled in Conroe, Texas.

D.  **ACTS IN FURTHERANCE OF THE SCHEME**

Transfer of the Caravans

11. Starting in or about the fall of 2005, defendant ROBERT DANIEL HEARN arranged for approximately 60 caravans or trailers, with associated equipment, which were the property of the United States government, to be moved from a power plant being constructed at Khor Az Zubair ("KAZ"), Iraq, to the Port of Umm Qasr. These caravans served as living and office accommodations for government and private personnel. Because construction of the KAZ power plant was winding down, the caravans were no longer needed at that location.

12. Without authorization from the Department of State or his superiors at IRMO, defendant ROBERT DANIEL HEARN negotiated the transfer of the caravans to the Port with

representatives of the United States Army's Joint Contracting Command - Iraq and Afghanistan, as well as private contractors hired by the Army to administer the KAZ power plant contract.

13. On or about December 11, 2005, without authorization, defendant ROBERT DANIEL HEARN signed documents on behalf of IRMO to accept the caravans and authorize their transfer to the Port.

14. In or about January 2006, contracting officials discovered that IRMO did not have the necessary property accountability procedures in place to accept the shipment from the KAZ power plant project. When contracting officials notified defendant ROBERT DANIEL HEARN of this problem, defendant ROBERT DANIEL HEARN arranged for an Iraqi citizen, Person 1, on or about February 26, 2006, to sign for the caravans on behalf of the Iraqi Ministry of Transportation. Defendant ROBERT DANIEL HEARN caused Person 1, who became an employee of BAC in or about January 2006, to sign for the transfer. Subsequently a portion of the caravans were transferred to the Port, in part by BAC employees.

IRMO-BAC Lease Agreement

15. On or about January 1, 2006, defendant ROBERT DANIEL HEARN signed a lease agreement, purportedly on behalf of IRMO, with BAC, under which BAC would operate a portion of the Port for a period of three years. Defendant ROBERT DANIEL HEARN also placed his signature over the seal of the United States Coalition Provisional Authority ("CPA"). Defendant ROBERT DANIEL HEARN had no authority to execute the lease on behalf of IRMO, and did not discuss it with his supervisor. In addition, defendant ROBERT DANIEL HEARN held no position with the CPA, which was dissolved in or about 2004.

16. From in or about January 2006 through September 2006, defendant ROBERT

DANIEL HEARN directed the operations of this portion of the Port, which became known as "Bob's Camp," a reference to defendant ROBERT DANIEL HEARN's control of the area. Defendant ROBERT DANIEL HEARN arranged for approximately twenty-eight of the caravans transferred from KAZ to be delivered to "Bob's Camp."

Recall and Resignation

17. On or about July 23, 2006, IRMO reassigned defendant ROBERT DANIEL HEARN from the Port, and directed him to return to Baghdad by August 15, 2006. Defendant ROBERT DANIEL HEARN's supervisor sought to reassign him based, in part, on his failure to carry out his function of advising the Director of the Port. Defendant ROBERT DANIEL HEARN sought an extension of the reassignment deadline, which IRMO granted until September 15, 2006. Defendant ROBERT DANIEL HEARN did not report to Baghdad, choosing to resign from IRMO instead. The Department of State processed defendant ROBERT DANIEL HEARN's resignation effective September 26, 2006.

Lease of Caravans

18. On or about September 14, 2006, the day before defendant ROBERT DANIEL was supposed to return to Baghdad, BAC entered into an agreement with Company 1 to lease twelve accommodation rooms and one office cabin in "Bob's Camp" for the period of October 1, 2006, through September 30, 2007. The rooms and cabin covered by the lease were a portion of the caravans that defendant ROBERT DANIEL HEARN had arranged to move to the Port. Defendant ROBERT DANIEL HEARN negotiated the lease with a representative of Company 1 and directed a BAC employee to sign the agreement for BAC. Company 1 provided $3,000 cash to BAC on the same day as a deposit for the first month of the lease.

5

19. Defendant ROBERT DANIEL HEARN directed that all payments made by Company 1 under the lease agreement be wired to a bank account in Conroe, Texas, held in the name of Sinbad Shipping Services USA ("Sinbad Shipping"), an entity which he controlled. Sinbad Shipping was not a registered business in the United States, and existed solely as owner of the Conroe, Texas, bank account.

20. On or about September 22, 2006, Company 1 wired $57,000, an amount representing first and last month's rent under the lease agreement, to Sinbad Shipping's bank account in Conroe, Texas. Defendant ROBERT DANIEL HEARN controlled these funds and used them for personal and business expenses.

21. On or about October 26, 2006, Company 1 wired $30,000 for November 2006 rent to Sinbad Shipping's account in Conroe, Texas. Defendant ROBERT DANIEL HEARN controlled these funds and used them for personal and business expenses.

22. On or about November 27, 2006, Company 1 wired $30,000 for December 2006 rent to Sinbad Shipping's account in Conroe, Texas. Defendant ROBERT DANIEL HEARN controlled these funds and used them for personal and business expenses.

23. On or about December 22, 2006, Company 1 wired $30,000 for January 2007 rent to Sinbad Shipping's account in Conroe, Texas. Defendant ROBERT DANIEL HEARN controlled these funds and used them for personal and business expenses.

E. **EXECUTION OF THE SCHEME TO DEFRAUD**

24. On or about the following dates, in the Southern District of Texas and elsewhere, Defendant ROBERT DANIEL HEARN, having devised and intended to devise the scheme and artifice to defraud as set forth above, and for the purpose of executing this scheme and artifice,

caused to be transmitted by means of wire transmission in interstate and foreign commerce the signs and signals set forth below, each wire transmission constituting a separate count of this Indictment, as follows:

| COUNT | DATE | WIRE | FROM | TO |
| --- | --- | --- | --- | --- |
| One | 9/22/06 | $57,000 | Account held by Company 1 at Coutts and Company in London, United Kingdom | Account held by Sinbad Shipping Services USA at Bank of America in Conroe, Texas |
| Two | 10/26/06 | $30,000 | Account held by Company 1 at Coutts and Company in London, United Kingdom | Account held by Sinbad Shipping Services USA at Bank of America in Conroe, Texas |
| Three | 11/27/06 | $30,000 | Account held by Company 1 at Coutts and Company in London, United Kingdom | Account held by Sinbad Shipping Services USA at Bank of America in Conroe, Texas |
| Four | 12/22/06 | $30,000 | Account held by Company 1 at Coutts and Company in London, United Kingdom | Account held by Sinbad Shipping Services USA at Bank of America in Conroe, Texas |

All in violation of Title 18, United States Code, Section 1343.

## COUNT FIVE
### (Conversion – 18 U.S.C. § 654)

25. The allegations in paragraphs 1 through 5 and 7 through 23 of this Indictment are incorporated here as if fully restated.

26. On or about September 14, 2006, in the Southern District of Texas and elsewhere, defendant

**ROBERT DANIEL HEARN,**

being an officer and employee of the United States Department of State, wrongfully converted to his own use the money and property of another, valued at more than $1,000, namely housing and office caravans, and the rental income from that property, to which he held no legal title, and which came into his possession and under his control in the execution of his federal office and employment, and under color and claim of authority as a federal officer and employee, resulting in his receipt of approximately $147,000 in rental proceeds.

All in violation of Title 18, United States Code, Section 654.

## NOTICE OF FORFEITURE

27. As a result of the violations of Title 18, United States Code, Section 1343, set forth in Counts One through Four of this Indictment, defendant

**ROBERT DANIEL HEARN**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $147,000.

28. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture, and to seek a personal money judgment in the amount of $147,000.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON OF THE GRAND JURY

JOSÉ ANGEL MORENO
United States Attorney

DENIS McINERNEY
Chief, Fraud Section
United States Department of Justice

By: *Catherine Votaw*
CATHERINE VOTAW
Trial Attorney

JACK SMITH
Chief, Public Integrity Section
United States Department of Justice

By: *Eric Olshan*
ERIC G. OLSHAN
Trial Attorney